John H. HOWKINS, Plaintiff,

v.

Sam S. CALDWELL, et al., Defendants.

Civ. A. No. C 82–2308A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 14, 1983.
On Rehearing Jan. 17, 1984.

Frank Specht, Atlanta, Ga., for plaintiff.

Marion Gordon, Wayne Yancey, Gary Hurst, Atlanta, Ga., for defendant.

## ORDER

VINING, District Judge.

The plaintiff, John H. Howkins, brought this action against defendant Sam S. Caldwell, Commissioner of the Georgia Department of Labor ("GDL"), and J. Freeman Railey, Deputy Director of the Unemployment Insurance Division of the GDL. Howkins claims that the defendants' decision to demote him violated his due process and equal protection rights secured by the Fourteenth Amendment and 42 U.S.C. § 1983 (1976). Pending before this court are several motions, including the defendants' motion for summary judgment. Because this court concludes that the defendants' motion for summary judgment should be granted, there is no need to address the remaining motions.

## I. BACKGROUND

Howkins was hired by the GDL in April 1970, and on or about July 1, 1977, Howkins was promoted to "Chief Appeals Referee." He remained in that capacity, although his position title changed to "Administrative Hearing Office IV", until March 9, 1981, the effective date of his demotion. While serving as both the Chief Appeals Referee and the Administrative Hearing Officer IV, Howkins supervised a large professional and clerical staff.

In a letter dated February 20, 1981, Howkins was notified of the GDL's decision to demote him pursuant to O.C.G.A. §§ 45–20–8, –9, and the Georgia State Personnel Board Rules 10.302 and 15. The letter charged Howkins with insubordination and alleged that Howkins lacked the ability to

supervise adequately his staff.[1] Howkins appealed this adverse decision to defendant Caldwell, who, in a written letter to Howkins, affirmed the earlier decision to demote. Caldwell's letter also notified Howkins of his right to appeal this determination to the Georgia State Personnel Board ("GSPB"). On March 19, 1981, Howkins appealed Caldwell's decision to the GSPB, and a hearing on the appeal was held on April 30, 1981.

At the April 30 hearing, which was presided over by Hearing Officer Theus, Howkins appeared with counsel and was afforded the following rights: (1) the right to be represented by counsel; (2) the right to present evidence; (3) the right to rebut adverse evidence, including cross-examining adverse witnesses; (4) the right to have a decision based solely upon the evidence introduced at the hearing; and (5) the right to have a complete record. The hearing which commenced on April 30 continued until May 1, 1981. Of the thirteen witnesses who testified at the hearing, twelve testified on behalf of the GDL. Howkins was the sole witness who testified in his behalf.

On July 12, 1981, Hearing Officer Theus issued an Initial Decision upholding the GDL's decision to demote Howkins. In his findings of fact Theus specifically concluded that Howkins had problems supervising his staff; that Howkins' behavior toward the staff created attitude problems among many members; that Howkins was, at times, indecisive and argumentative towards others, and this indecisiveness and argumentative behavior created management problems for Howkins' superiors; that Howkins had neglected some of his specified duties; that Howkins had challenged in an abrasive and disruptive manner a decision of the "Board of Review," a precedent setting body within the GDL; and that Howkins had informed one of his subordinate hearing officers not to worry about the Board of Review, implying that it was not necessary to abide by the board's precedential decision. Theus concluded as a matter of law that "A preponderance of the evidence shows that ... [Howkins] was in fact negligent and inefficient in the performance of his assigned duties ... [and that] Howkins committed an act of misconduct in the performance of his assigned duties by challenging the decision of the Board of Review...." Accordingly, Theus determined that this negligence, inefficiency, and misconduct were sufficient to warrant demotion as provided by Georgia State Personnel Board Rules 10.302 and 15.

On June 29, 1981, Howkins appealed Theus' decision to the State Personnel Board ("Board"), and on July 22, 1981, the Board denied Howkins' appeal and affirmed Theus' decision.

On August 21, 1981, pursuant to O.C.G.A. § 45–20–9, Howkins filed a Petition for Review of Decision of the Georgia State Personnel Board in the Superior Court of Fulton County, Georgia. In his petition Howkins challenged Theus' decision on both substantive and procedural grounds. Substantively, Howkins essentially claimed that because of certain inconsistencies in the testimony of the twelve witnesses who testified on behalf of the GDL, the evidence presented and accepted did not support Theus' factual and legal conclusions. Procedurally, Howkins made three allegations: (1) that he was denied an opportunity to join in his own defense as co-counsel; (2) that hearsay rules were improperly applied on occasion; and (3) that

---

1. The specific reasons given in the letter to Howkins were as follows:

 1. Your inability to perform assigned duties in that on December 1, 1980, you challenged a decision of the Board of Review. As you are aware, the Board of Review is, by law, the highest Administrative review body within the Employment Security Agency of the Georgia Department of Labor.

2. Inability to supervise employees of your section. On several occasions high level Hearing Officers have threatened to resign due to your lack of leadership. Your moment-to-moment or day-to-day changing of instructions to Hearing Officers has led to frustration among the employees of the Appeals Section to the point that there have been physical and emotional problems with employees.

Theus was biased against Howkins' case. In the petition Howkins claimed that rights secured by the Fourteenth Amendment had been violated by his unwarranted demotion; he did not claim that any other constitutional or statutory rights had been violated.

On March 2, 1982, the Superior Court issued its opinion. Regarding Howkins' substantive claim, the court reviewed the records of the administrative proceedings and concluded that there was evidence which supported the Board's findings. In reaching this decision the court employed the so-called "any evidence" standard of review—that is, whether there is any evidence in the record below to support the Board's findings and conclusions. *See* O.C.G.A. § 45-20-9(m). With respect to Howkins' procedural claims, the court rejected each serially. First, Howkins was not denied the right of self-representation since he was represented by counsel and since he never communicated a desire to act as his own co-counsel; he was merely restrained from engaging in inappropriate colloquy with witnesses. Second, Howkins had made an insufficient showing regarding the alleged error in the admission or exclusion of testimony subject to the hearsay rule. After reviewing the record, the court determined that on most occasions hearsay testimony was properly excluded and that on other occasions it was properly admitted for a limited purpose. Third, the court declined considering Howkins' tenuous claims of bias and prejudice since he failed to raise them on appeal to the Board below. The Superior Court concluded its order by stating "Any and all constitutional claims *having been waived by the petitioner in open court* upon [the] hearing of this appeal, the same are not considered here." *Howkins v. Georgia Department of Labor,* C–77783, Slip op. at 2 (Super.Ct. Fulton County March 2, 1983) (emphasis added). Howkins did not appeal the decision of the Superior Court.

On October 25, 1982, Howkins instituted this suit, claiming that the defendants' act of demoting him denied him equal protection and due process. Jurisdiction was predicated upon the Fourteenth Amendment, 42 U.S.C. § 1983, and 28 U.S.C. §§ 1331 and 1343. The defendants filed a motion for summary judgment on November 26, 1982, and asserted three arguments supporting this motion: (1) the adverse judgment in the Superior Court action barred Howkins' federal court suit under the doctrines of res judicata and collateral estoppel; (2) the Eleventh Amendment barred recovery by Howkins against the defendants in their official capacities; and (3) Howkins had failed to state a claim upon which relief could be granted. Howkins opposed the defendants' motion for summary judgment and asserted that the principles of res judicata and collateral estoppel are inapplicable where the prior proceedings failed to meet minimum standards of due process. Howkins claimed that the administrative and state court proceedings should not bar this suit because the "any evidence" standard was employed by the state court. Subsequently, Howkins asserted three additional grounds for relief in the present suit. He claimed that (1) the defendants' acts violated his First Amendment right of free speech; (2) these acts contravened provisions of the Intergovernmental Personnel Act, 42 U.S.C. §§ 4701–72 (1976); and (3) Hearing Officer Theus had a personal interest in upholding Howkins' demotion, thus denying him a fair hearing.

## II. DISCUSSION

Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears an exacting burden of establishing that there is no dispute regarding any material fact in the case. *Warrior Tombigee Transportation Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir.1983). And all reasonable doubts about the facts should be resolved in favor of the nonmovant. *Clemons v. Dougherty County, Georgia,* 684 F.2d 1365, 1369 (11th Cir. 1982). Finally, a party may raise a res judicata defense on a motion for summary

judgment after introducing sufficient information into the record to permit the court to judge the sufficiency of the defense. *Jones v. Gann*, 703 F.2d 513, 515 (11th Cir.1983). The court concludes that this case is ripe for summary judgment, since the critical question presented is whether Howkins is precluded as a matter of law from litigating this suit because of his previous suit in the Superior Court of Fulton County, Georgia.

### A. The Application of the Principles of Res Judicata and Collateral Estoppel

 The related doctrines of res judicata and collateral estoppel play key roles in the final resolution of legal battles. Both doctrines are designed to relieve parties of the cost of multiple lawsuits, conserve judicial resources, promote comity between state and federal courts, and, by preventing inconsistent decisions, encourage reliance on adjudication. *See Kremer v. Chemical Construction Co.*, 456 U.S. 461, 466 n. 6, 102 S.Ct. 1883, 1890 n. 6, 72 L.Ed.2d 262 (1982). Res judicata, or claim preclusion, prevents parties in a suit in which a final judgment is rendered from relitigating a subsequent suit based on the same cause of action. Collateral estoppel, or issue preclusion, on the other hand, bars the relitigation of issues that were litigated in a prior suit and were essential to the outcome of trial. In applying res judicata and collateral estoppel federal courts are required to give state court judgments preclusive effect when the procedures employed satisfy minimum standards of due process. *See* 28 U.S.C. § 1738 (1976). *See also Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). Both res judicata and collateral estoppel have been applied to bar litigating claims brought pursuant to 42 U.S.C. § 1983. *See Allen v. McCurry, supra* (collateral estoppel); *Jones v. Gann*, 703 F.2d at 515–16 (res judicata). In the instant case the question is whether the principles of res judicata bar Howkins' federal court suit. In order for a

prior judgment to bar a subsequent action, it is well-accepted

(1) that the prior judgment must have been rendered by a court of competent jurisdiction;

(2) that there must have been a final judgment on the merits;

(3) that the parties, or those in privity with them, must be identical in both suits;

(4) that the same cause of action must be involved in both suits.

*Ray v. TVA*, 677 F.2d 818, 821 (11th Cir. 1982), *cert. denied*, 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983). Each of these four requirements is satisfied in this case. Under O.C.G.A. § 45–20–9(m) jurisdiction over appeals from the State Personnel Board is vested in the Superior Court. Thus, the Superior Court was a court of competent jurisdiction within the meaning of the first requirement of *Ray*. The second requirement is satisfied because the Superior Court's decision was based on the merits of the case as reflected in the record. The third requirement of *Ray* is satisfied because the parties in both the Superior Court and the present suit are in privity with each other. It cannot be argued seriously that defendant S. Sam Caldwell, as Commissioner of the Georgia Department of Labor, and J. Freeman Railey, as Deputy Director of the Georgia Department of Labor, are not legally identical for the purposes of Howkins' present suit. *See, e.g., Jones v. Gann*, 703 F.2d at 515 (plaintiff cannot merely substitute different defendants for the same cause of action in order to defeat the privity requirement). The final requirement of *Ray*—a showing that the same cause of action is involved in each suit—is also satisfied here, since the same set of facts triggered both suits. Furthermore, the gravamen of both of Howkins' lawsuits is his demotion at the GDL. In summary, there is little doubt that each of the four requirements of *Ray* is satisfied here.

Throughout the course of this proceeding, however, Howkins has attempted to add claims that were not litigated at either

the state administrative or the Superior Court level. The three such claims which Howkins has raised here are (1) a First Amendment claim (initially raised by motion on May 26, 1983), (2) a claim based on the Intergovernmental Personnel Act (initially raised in a supplemental brief on May 11, 1983), and (3) a claim founded upon mere innuendo and illogical premises essentially alleging that Hearing Officer Theus had a personal interest in the outcome of Howkins' hearing (initially raised by motion on August 15, 1983). Howkins has raised these claims in an apparent attempt to defeat the fourth requirement of *Ray*. Although the merits of each of these claims will be discussed in this order, this court concludes that Howkins has either explicitly or implicitly waived the right to assert each of these claims. At the appeal of the Board's decision before the Superior Court, Howkins explicitly waived litigating all constitutional claims he may have had, including the First Amendment claim he raises here. With respect to the remaining two claims, this court concludes that Howkins implicitly waived his right to assert them here because he did not assert them at either the administrative or the state judicial levels. *See Underwriters National Assurance Co. v. North Carolina Life and Accident and Health Insurance Guaranty Association*, 455 U.S. 691, 710, 102 S.Ct. 1357, 1368, 71 L.Ed.2d 558 (1982) ("A party cannot escape the requirements of full faith and credit and *res judicata* by asserting its own failure to raise matters clearly within the scope of a prior proceeding"); *Nilsen v. City of Moss Point*, 701 F.2d 556, 560 (5th Cir.1983) (en banc) (res judicata bars all claims that were or could have been litigated at the earlier trial); *Southern Jam, Inc. v. Robinson*, 675 F.2d 94, 98 (5th Cir.1982) (litigant precluded from asserting claim he could have raised, but did not, in the prior proceeding).

▆ Howkins does not challenge the defendants' argument that each of the four res judicata requirements is satisfied. Rather, Howkins alleges that the administrative and state court procedures were constitutionally defective and should not be given preclusive effect. Specifically, Howkins objects to the "any evidence" standard of review employed by the Superior Court. Citing *Allen v. McCurry*, Howkins correctly begins with the premise that in order to preclude a litigant's second suit, the litigant must have had a full and fair opportunity to prosecute his claim below. *See* 449 U.S. at 95, 101 S.Ct. at 415. His legal and logical errors are revealed in his next premise. Howkins equates "full and fair" with the "substantial evidence" standard of review in state administrative law appeals. Howkins asserts that due process is violated when the reviewing court employs anything less than the substantial evidence standard of review. This court disagrees.

▆ Initially, the court notes that due process merely requires an opportunity for a hearing appropriate to the nature of the case, *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950), granted at a meaningful time and in a meaningful manner. *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). For example, when a teacher who is to be terminated for cause opposes his termination, due process requires that:

(a) he be advised of the cause or causes for his termination in sufficient detail to fairly enable him to show any error that may exist,

(b) he be advised of the names and the nature of the testimony of witnesses against him,

(c) at a reasonable time after such advice he must be accorded a meaningful opportunity to be heard in his own defense, [and]

(d) that hearing should be before a tribunal that both possesses some academic expertise and has an apparent impartiality towards the charges.

*Ferguson v. Thomas*, 430 F.2d 852, 857 (5th Cir.1970) (citing *Pickering v. Board of Education*, 391 U.S. 563, 578 n. 2, 88 S.Ct. 1731, 1739 n. 2, 20 L.Ed.2d 811 (1968)).

An argument similar to that which Howkins raises here was considered and reject-

ed by the Supreme Court in *Kremer v. Chemical Construction Co.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). In that case the plaintiff, Kremer, filed a claim with the EEOC, asserting that he was discharged for discriminatory reasons. In compliance with the statute, the EEOC referred Kremer's claim to the New York State Division of Human Rights ("NYHRD"), the agency charged with enforcing the New York law prohibiting employment discrimination. *See* 42 U.S.C. § 2000e–5(c). After investigating Kremer's complaint, the NYHRD found Kremer's complaint meritless. This decision was upheld by the NYHRD Appeals Board which found the initial decision not to be arbitrary, capricious, or an abuse of discretion. *See* 102 S.Ct. at 1888. Kremer appealed the adverse administrative determination to the Appellate Division of the New York Supreme Court, and the Appellate Division unanimously upheld the Appeals Board's order. Kremer could have, but did not seek review by the New York Court of Appeals. Instead, he brought suit in federal district court, claiming that the defendant's conduct violated Title VII of the Civil Rights Act of 1964. The district court concluded that Kremer's action was barred by the doctrine of res judicata, 477 F.Supp. 587, 589–90 (S.D.N.Y.1979), and the Second Circuit and the Supreme Court affirmed. *See* 623 F.2d 786 (2d Cir.1980), *aff'd*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). Like Howkins, Kremer argued, in part, that res judicata was inapplicable because his due process rights were violated when the state court merely summarily

affirmed the administrative decisions below. The Court rejected this argument. Initially, the Court recognized that there is no single model of procedural due process applicable to all cases. 102 S.Ct. at 1898. The Court then described the administrative and judicial procedures applicable to Kremer's claim, procedures remarkably similar to those applicable to Howkins' claim here,[2] and concluded that Kremer was afforded his due process rights in the proceedings below. *Id.* at 1898–99. Accordingly, the Court deemed appropriate the application of res judicata to Kremer's claim. *Id.* at 1899.

In this case this court is satisfied that the hearing and reviewing procedures of the Georgia State Personnel Board fully afforded Howkins his due process rights. Howkins was given a hearing with notice; he was represented by counsel; he was allowed to present witnesses and evidence on his behalf; he was permitted to cross-examine opposing witnesses; and he enjoyed a review of the hearing officer's findings, as adopted by the Georgia State Personnel Board, in a competent judicial forum. Additionally, this court is convinced that the reviewing standards employed by the Superior Court fully complimented Howkins' due process rights. Under O.C. G.A. § 45–20–9(m), the reviewing court may reverse a decision or order of the Board if the findings, inferences, conclusions, decisions, or orders are

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the Board;

---

**2.** The NYHRD Appeals Board's review in *Kremer* was limited to whether the order of the division was

 a. in conformity with the Constitution and the laws of the state and the United States;

 b. within the division's statutory jurisdiction or authority;

 c. made in accordance with procedures required by law or established by appropriate rules or regulations of the division;

 d. supported by substantial evidence on the whole record;

 e. not arbitrary, capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

N.Y.Exec. § 297–a(7)(e) (McKinney 1982). In addition, the state court reviewing the NYHRD Appeals Board's decision in *Kremer* was limited to determining whether the Board's decision was arbitrary, capricious, or an abuse of discretion. *See* N.Y.Civ.Prac.Law § 7803(3) (McKinney 1981). The combined administrative and judicial standard of review in *Kremer* is nearly identical to the administrative/judicial standard of review afforded Howkins in his prior state proceedings. *See* O.C.G.A. § 45–20–9(m) (cited *infra* at p. 105).

(3) Made upon unlawful procedure;

(4) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(5) Arbitrary, capricious, or characterized by an abuse of discretion or clearly unwarranted exercise of discretion.

The scope of judicial review under O.C.G.A. § 45–20–9(m) requires the reviewing court to determine whether an administrative finding is supported by evidence; the reviewing court is not concerned with the weight of the evidence. The fact that the Georgia legislature and courts have confined the scope of review in appeals from the State Personnel Board to be an "any evidence" standard,[3] *see Hall v. Ault,* 240 Ga. 585, 586, 242 S.E.2d 101 (1978), does not present a constitutional due process violation. *See, e.g., Kremer v. Chemical Construction Co.,* 456 U.S. at 481 n. 21, 102 S.Ct. at 1896 n. 21 ("There is no requirement that judicial review must proceed *de novo* if it is to be preclusive.").[4]

**B. The Additional Claims Howkins Asserts in this Case**

As discussed above, this court concludes that Howkins either expressly or implicitly waived his right to assert each of the three challenges that he has presented before this court. However, assuming arguendo that Howkins did not waive his right to assert these challenges, this court concludes as a matter of law that each is without merit.

1. *The First Amendment Claim*

 With respect to Howkins' First Amendment claim, this court concludes that based on both the facts stipulated and those presented to the court, this claim lacks merit. *See, e.g., Williams v. Board*

*of Regents of University System of Georgia,* 629 F.2d 993, 1003 (5th Cir.1980), *cert. denied,* 452 U.S. 926, 101 S.Ct. 3063, 69 L.Ed.2d 428 (1981) (question of whether the plaintiff was disciplined for reasons that impermissibly abridged First Amendment rights is a question of law for the trial court); *Schneider v. City of Atlanta,* 628 F.2d 915, 919 (5th Cir.1980) (same). The plaintiff claiming discrimination on the basis of the exercise of constitutionally protected speech must initially demonstrate that the speech is in fact constitutionally protected. *Mt. Healthy School District Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). Speech closely connected with insubordination is not protected. *Williams v. Day,* 553 F.2d 1160, 1162 (8th Cir.1977). Similarly, speech which interferes with the operation of the work place is not protected. *See Schneider,* 628 F.2d at 918–19; *Sprague v. Fitzpatrick,* 546 F.2d 560, 565–66 (3d Cir.1976), *cert. denied,* 431 U.S. 937, 97 S.Ct. 2649, 53 L.Ed.2d 255 (1977); *Kannisto v. City and County of San Francisco,* 541 F.2d 841, 844 (9th Cir.1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1552, 51 L.Ed.2d 775 (1977); *Phillips v. Adult Probation Department,* 491 F.2d 951, 954–55 (9th Cir.1974). And speech involving matters related to the employee's personal interests, rather than speech involving matters of public concern, is not protected. *Connick v. Myers,* 461 U.S. 138, ——, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). Finally, the plaintiff must demonstrate that the exercise of the protected speech was the motivating factor in the state's decision to punish him, and that the state would not have reached the same decision in the absence of protected conduct. *Mt. Healthy,* 429 U.S. at 287, 47 S.Ct. at 576; *Hillis v. Stephen F. Austin State University,* 665

---

3. Although the "any evidence" standard applied to the Superior Court's review of the Board's decision, this court is confident that the Board's decision would have easily satisfied the "substantial evidence" standard. For example, it is uncontroverted that 12 out of the 13 witnesses testifying at the hearing testified against Howkins. In addition, the testimony offered persuasively illustrated a pattern of inefficient, sub-

standard, and unacceptable work and supervisory practices on Howkins' part.

4. This court's decision that summary judgment is warranted based on the res judicata effect of Howkins' adverse state court decision makes unnecessary any analysis of the immunity/Eleventh Amendment argument raised by the defendant.

F.2d 547, 551–52 (5th Cir.), *cert. denied,* 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982) (evidence established that the teacher's abrasive personality and unsatisfactory work performance, and not the exercise of protected First Amendment speech, were the substantial motivating factors in the university's decision not to renew the teacher's contract).

 In this case this court concludes that based on the pleadings and transcript of the hearing, Howkins fails miserably in his attempt to establish a violation of his First Amendment rights. His conduct was closely connected with, and actually classified as, insubordination. In addition, the record reveals that his speech substantially interfered with the working operation of his superiors, including that of the Board of Review, and to a lesser extent it disrupted his subordinates' working environment. Finally, Howkins does not, nor can he, demonstrate that the demotion would not have occurred but for the exercise of the speech. In the letter informing Howkins of his demotion two general reasons for his demotion were stated—his insubordinate act (which he, of course, claims is protected speech), and his inability to supervise employees and manage his department. *See supra* n. 1. In light of the testimony of the numerous witnesses supporting the latter charge, Howkins can muster little colorable evidence supporting the proposition that absent his insubordinate act, he would not have been demoted. Accordingly, this court finds no merit in Howkins' First Amendment claim.

2. *The Intergovernmental Personnel Act Claim*

 Howkins also seeks relief under the Intergovernmental Personnel Act ("IPA"), 42 U.S.C. §§ 4701–72 (1976), claiming that regulations implementing the IPA prohibited the defendants' actions. However, the IPA does not contain an express private right of action; therefore, this court's initial task is to determine whether a private right of action may be implied. In recent years the Supreme Court has

substantially modified the four-part analysis in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975), for determining whether an implied right of action has been created by any federal statute. The critical factor in the present analysis is whether there is an indication of any legislative intent to create a private remedy. *See Middlesex County Sewage Authority v. National Sea Clammers Association,* 453 U.S. 1, 13, 101 S.Ct. 2615, 2622–23, 69 L.Ed.2d 435 (1981); *Texas Industries, Inc. v. Radcliffe Materials, Inc.,* 451 U.S. 630, 639, 101 S.Ct. 2061, 2066, 68 L.Ed.2d 500 (1981). *See also Local Division 732, Amalgamated Transit Union v. MARTA,* 667 F.2d 1327, 1335 (11th Cir.1982) (recognizing the Supreme Court's articulation of the new test and stating that the sole question now is whether there is "clear evidence that Congress intended to provide such a remedy"). In this case this court can find no legislative intent establishing the propriety of implying a private right of action. Although the statute may benefit the individual state and local employees derivatively, its purpose was much broader. The statute was designed to provide federal funds to state and local governments in order that they might attract qualified candidates and keep qualified employees. *See* H.R.Rep. No. 91–1733, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Ad. News 5879, 5880–84 (1970). According to the statute, the United States Office of Personnel Management is the only body capable of enforcing the IPA's substantive provisions, and it accomplishes this through the "termination of grants" section. 42 U.S.C. § 4767. Since this court finds no evidence—clear, affirmative, or otherwise—of Congress' intent to create a private right of action in the IPA, Howkins has no claim under the IPA. *See Brown v. Ledbetter,* 569 F.Supp. 170 (N.D.Ga.1983) (Ward, J.) (no private right of action under the Intergovernmental Personnel Act).

3. *Attacking Hearing Officer Theus' Impartiality*

 Clinging to the last straw, Howkins beckons this court to conclude on innu-

endo alone that Hearing Officer Theus, who presided over Howkins' hearing, was not impartial. In support of this claim Howkins asks this court to take judicial notice of the following:

(1) hearing officers depend on political favor for both their initial appointment and their continued employment;

(2) hearing officers are appointed by the State Commissioner of Personnel and may be discharged without cause;

(3) the Commissioner of Personnel in turn is appointed by the governor and may also be discharged without cause;

(4) the Commissioner depends on political favor for his appointment and tenure;

(5) political officials such as the Commissioner generally have an interest in controlling the merit system protest procedures immediately upon gaining their positions as heads of agencies;

(6) thus, a hearing officer could not help but appreciate that losing favor in the political community would mean that he would soon lose his job....

And the list goes on. These are not matters of which this court can take judicial notice. In addition, the record is totally devoid of any facts supporting these bald allegations. This court has read the transcript of the hearing conducted by Hearing Officer Theus. There is nothing in that transcript to support Howkins' claim that the hearing was conducted in a biased or prejudiced manner that affected his rights. It is true that a substantial number of the GDL's hearsay objections were sustained, but that is because Howkins repeatedly attempted to testify as to what other people told him, and the objections were proper. This court does not sit to review errors in evidentiary rulings that do not rise to a constitutional level. Although this court might have ruled differently in a few instances, this court cannot say that the rulings made by the hearing officer constituted even reversible error, and they certainly did not constitute error of a constitutional

level. Accordingly, this court considers this claim to be meritless.

## CONCLUSION

In summary, this court concludes that based on the doctrines of res judicata and collateral estoppel, Howkins is precluded from litigating claims that he either presented or could have presented in his Fulton County Superior Court action. Alternatively, this court concludes that the claims Howkins presents to this court do not demonstrate that his demotion was unwarranted. Accordingly, the defendants' motion for summary judgment is GRANTED and this action is DISMISSED with prejudice. All remaining motions pending before this court are rendered moot.

## ON REHEARING

■ In this 42 U.S.C. § 1983 action the plaintiff has moved for a rehearing, clarification, and modification of this court's October 14, 1983, order. In the October 14 order the court concluded that the plaintiff's claims were barred by the principles of res judicata and collateral estoppel because the plaintiff either litigated or could have litigated the same claims in an earlier state court proceeding. Accordingly, the court granted the defendants' motion for summary judgment. There were several additional motions pending before the court at the time the court granted the defendants' summary judgment motion, including two motions to amend the complaint.

After granting the motion for summary judgment, the court determined that the plaintiff's motions to amend were moot. In the proposed amendments the plaintiff asserted a "continuing wrong" theory, essentially alleging that subsequent to the disposition of the state case the defendants continued to harass the plaintiff and continued to interfere with the plaintiff's performance of his job. On reconsideration the court recognizes that since the injury the plaintiff asserts in the proposed amendments occurred after the state action was disposed of, the grant of the motion for summary judgment does not preclude the

plaintiff from litigating his continuing wrong theory. *See, e.g., Middle Atlantic Utilities Co. v. S.M.W. Development Corp.,* 392 F.2d 380 (2d Cir.1968). Accordingly, the court will permit the plaintiff to amend his complaint. However, the court emphasizes that any claim or cause of action that either was or could have been litigated in the state court proceeding may not be litigated in this case. *See* Order dated October 14, 1983, at 10–11.

In their sole challenge to this motion for a rehearing, clarification, and modification the defendants assert that the amendments to the complaint fail to state a claim because the amendments are not supported by specific facts. The court has carefully examined the proposed amendments and concludes that under the modern theory of notice pleading the amendments contain sufficient factual allegations to state a claim; therefore, the amendments are proper.

In summary, the judgment entered on October 14, 1983, is vacated. The plaintiff's motions to amend filed on May 26, 1983, and June 7, 1983, are GRANTED. The original complaint remains DISMISSED pursuant to this court's October 14, 1983, order, and this case shall proceed on the plaintiff's amendments which were pending at the time this court granted the defendants' motion for summary judgment.