John A. CANFIELD,
Plaintiff-Appellant,

v.

George M. SULLIVAN, James D. Dunn,
Ronald A. Garzini and Fred Jones,
Defendants-Appellees.

No. 84–3640.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 5, 1985.

Decided Oct. 29, 1985.

C.R. Kennelly, William Donohue, Kennelly, Azar & Donohue, P.C., Anchorage, Alaska, for plaintiff-appellant.

Julie Garfield, Anchorage, Alaska, for defendants-appellees.

Before WRIGHT, POOLE and HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

## I. FACTS.

In September 1976, plaintiff John Canfield (Canfield) was hired by Mayor George Sullivan (Sullivan) as head of the Public Transit Division within the Department of Transportation of the Municipality of Anchorage. Canfield served a six-month probationary period and then became a permanent employee. On October 19, 1979, Canfield was summarily dismissed by James Dunn (Dunn), Director of Transportation. On November 5, Dunn wrote Canfield explaining that his dismissal resulted from "long term organizational deficiencies" regarding: improper handling of employee relations, inattention to administrative duties, general management deficiencies, and overall lack of confidence in his ability to manage the Transit Division to the administration's satisfaction. Canfield's dismissal was approved by Mayor Sullivan. The Municipality subsequently refused to participate in any grievance procedures.

Canfield filed the present action on March 20, 1980. He alleged that he had been denied due process and equal protection; that the city ordinances, if interpreted to provide that Canfield was an "at will" employee, conflicted with the Anchorage Home Rule Charter (Charter) and were invalid; and that the city had violated the Intergovernmental Personnel Act (IPA), 42 U.S.C. §§ 4701–72 (1976 & Supp.1981). The district court concluded that Canfield was an "executive" serving at the pleasure of the mayor and that Canfield lacked a property interest in continued employment. The district court also rejected Canfield's liberty interest, equal protection, and IPA claims, and granted summary judgment for the defendants on October 1, 1980.

On appeal, 685 F.2d 440 (9th Cir.1982), we reversed in an unpublished opinion and remanded for factual findings on the applicable ordinances and Personnel Rules. The district court made the requested findings on remand and reaffirmed its earlier decision granting summary judgment for defendants. The present appeal followed.

## II. STANDARD OF REVIEW.

Our task in reviewing a grant of summary judgment is "identical to that of the trial court." *M/V American Queen v. San Diego Marine Construction Corp.*, 708 F.2d 1483, 1487 (9th Cir.1983). Viewing the evidence in the light most favorable to the party opposing summary judgment, we review *de novo* whether there was no genuine issue of material fact and whether the moving party was entitled to judgment as a matter of law. *Id.; Lojek v. Thomas*, 716 F.2d 675, 677 (9th Cir.1983). The district court's interpretation of state law, including state statutes, is also subject to *de novo* review. *See In re McLinn*, 739 F.2d 1395, 1397–98 (9th Cir.1984) (en banc).

## III. ANALYSIS.

A. Interpretation of Anchorage's Personnel Rules.

Whether Canfield possessed a protectible property interest in his employment is defined by reference to state law, including city ordinances. *Bishop v. Wood*, 426 U.S. 341, 344 & n. 7, 96 S.Ct. 2074, 2077 & n. 7, 48 L.Ed.2d 684 (1976). *See also Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1314 (9th Cir. 1984). Under Alaska law, "[a] person who is employed 'at the pleasure' of his employer has no 'property' interest in continued employment that is protected by due process." *Breeden v. City of Nome*, 628 P.2d 924, 926 (Alaska 1981) (per curiam). General principles of statutory construction apply in the present case in interpreting Anchorage's personnel ordinances. *See Stanfill v. City of Fairbanks*, 659 P.2d 579, 581 (Alaska 1983). Thus, the sections of the personnel ordinances "must be construed so that each has meaning and the sections do not conflict with each other." *Id.*

The version of Anchorage's Personnel Rules in effect at the time of Canfield's hiring and dismissal was set forth in Anchorage Ordinance (AO) 48–76 as amended

by AO 76–76. *See* Anchorage, Alaska, Ordinance 48–76 (April 5, 1976) & Ordinance 76–76 (May 4, 1976). Under Anchorage's Personnel Rules, as adopted in AO 48–76, an "executive" employee is appointed by and serves at the pleasure of the mayor. Personnel Rule 17.7. We must determine whether the district court correctly concluded that Canfield was an "executive" who could be dismissed "at will" by the mayor.

The terms "executive position" and "executive employee" are defined in Personnel Rules 17.1(a) and (b), respectively. As it originally appeared in AO 48–76, subsection (a) of Rule 17.1 erroneously contained a definition of "executive employee" identical to the definition in subsection (b). We agree with the district court that Rule 17.-1(a) appearing in AO 48–76 contained a clerical error and that it was intended to define "executive position" as follows: "An executive position is a regular full-time position which involves principal responsibility for carrying out policies and programs." The district court's interpretation gives meaning to both subsections (a) and (b) of Rule 17.1 and is in accordance with the 1980 amendment adding the phrase "or part-time" after "full-time" in Rule 17.1(a). *See* Anchorage, Alaska, Ordinance 79–195 (Jan. 15, 1980). The definition of "executive position" adopted by the district court also coincides with, but is slightly different from, the version of Rule 17.1(a) ("An executive position is a regular full-time position which involves principal responsibility for the determination of policy and the way in which policies are carried out.") which was deleted by AO 48–76.

AO 76–76 classifies "Public Transportation Manager" as an executive position. Canfield argues that he was the Public *Transit* Manager and therefore was not an executive under AO 76–76 and Rule 17.7. However, defendant Dunn testified that there are five divisions within the Department of Transportation—Port of Anchorage, Merrill Field (the airport within city limits), traffic engineering, transit, and transportation inspection. AO 76–76 classifies as executives four of the five division heads within the Department—Port Manager, Airport Manager, Traffic Engineer, and Public Transportation Manager. The title "Public Transportation Manager" listed in AO 76–76 appears to have no meaning unless it refers to the position held by Canfield. We agree with the district court that the title "Public Transportation Manager" is synonymous with "Public Transit Manager." Such an interpretation is consistent with the Assembly's willingness to classify some division heads as executives and gives meaning to the title "Public Transportation Manager" used by the Assembly. Classifying Canfield's job as an executive position is also consistent with the definition of "executive position" set forth in Personnel Rule 17.1(a). Canfield was therefore an "executive" under AO 76–76.

Canfield's argument that he could not have known that he was an "executive" is without merit. Canfield served a probationary period but incorrectly argues that probation is not required for "executives." Defendant Dunn testified that "most of the executive appointments have probationary periods associated with them."[1] Excerpt of Record, at 758. More importantly, Canfield received numerous personnel communications indicating that he was an executive. In summary, we agree with the district court's conclusion that Canfield was an "executive" under the relevant ordinances and Personnel Rules.

**B. Conflict Between Personnel Rules and Home Rule Charter.**

 The interpretation of municipal charters, like the interpretation of ordi-

---

1. It is unclear whether probationary periods for executives are mandated by the Personnel Rules. *Compare* Personnel Rules 17.4 & 17.5(b) (deleting reference to probationary periods for executives) *with* Personnel Rules 7.1 & 17.8 (arguably permitting probationary periods for executives). In any event, the fact that most executives serve a probationary period undercuts Canfield's argument that he was not treated as a executive because he served a probationary period.

nances, is governed by rules of statutory construction. *City & Borough of Sitka v. International Brotherhood of Electrical Workers, Local Union 1547,* 653 P.2d 332, 335–36 (Alaska 1982). Although we have not found any Alaska case on point, the general rule applied in other jurisdictions is that an ordinance is invalid if it conflicts with a city's charter. *See Lucchesi v. City of San Jose,* 104 Cal.App.3d 323, 327–28, 163 Cal.Rptr. 700, 702–03 (1980); *Portland Police Association v. Civil Service Board,* 292 Or. 433, 639 P.2d 619, 623 (1982).

Section 5.02(a) of Anchorage's Charter provides that "[t]he Mayor shall appoint all heads of municipal departments, subject to confirmation by the Assembly, on the basis of professional qualifications. Persons appointed by the Mayor serve at the pleasure of the Mayor." Anchorage, Alaska, Home Rule Charter (Charter) art. V, § 5.02(a). The defendants do not dispute that Canfield was not a department head under section 5.02(a). Instead, they argue that section 5.02(a) does not expressly prohibit the Assembly from expanding the Mayor's executive appointment power. Thus, defendants contend that the Assembly is not prohibited from creating new "executive" positions in addition to those set forth in article V of the Charter. We agree.

We have not found any Alaska case directly on point. However, the California Supreme Court has held that "[a] city charter is construed to permit the exercise of all powers not expressly limited by the charter or by superior state or federal law. Restrictions on a charter city's powers may not be implied." *Taylor v. Crane,* 24 Cal.3d 442, 450–51, 155 Cal.Rptr. 695, 700, 595 P.2d 129, 134 (1979) (citation omitted). Other state courts have reached the same conclusion. *See Tipco Corp. v. City of Billings,* 197 Mont. 339, 642 P.2d 1074, 1077 (1982) (city "may exercise any power not prohibited by the Constitution, Law or Charter"); *Grayson v. Oregon,* 249 Or. 92,

436 P.2d 261, 264 (1968) ("city charter is a grant of authority, and not a limitation upon it").

In this case, the Charter does not expressly prohibit the Anchorage Assembly from creating new "executive" positions. In addition, section 17.11(b) of the Charter provides that the Charter provisions "may not be construed as implied limitations on other municipal activities not prohibited by law." We conclude that the Charter does not limit the Assembly's power to create additional "executive" positions. *See Miller v. City of Sacramento,* 66 Cal.App.3d 863, 867–70, 136 Cal.Rptr. 315, 318–20 (1977). The Personnel Rules therefore do not conflict with the Charter. As an "executive" serving at the pleasure of the mayor, Canfield lacked any property interest in his employment and he received the limited due process protections to which he was entitled as an "at will" employee. *See Breeden,* 628 P.2d at 926.[2]

## C. Equal Protection Claim.

■ Canfield also contends that the Personnel Rules deny him equal protection under the fourteenth amendment to the United States Constitution. Because there is no fundamental right to government employment and no suspect class alleged in this case, the Personnel Rules are valid if they are "rationally related to furthering a legitimate state interest." *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 312–13, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976) (per curiam). *See Lamb v. Scripps College,* 627 F.2d 1015, 1018–19 (9th Cir.1980).

Merit employment systems uniformly distinguish between classified and executive employees. Whether particular division heads should be included within the executive class involves linedrawing by the Assembly. "Such [line-drawing] by the legislature is presumed valid." *Murgia,*

**2.** Canfield briefly argues that he was also deprived of a liberty interest. Canfield's briefs on the original appeal (No. 80–3478) contained no reference to the liberty interest issue. Canfield therefore previously abandoned this issue and

we do not address it here. *See International Union of Bricklayers Local Union No. 20 v. Martin Jaska, Inc.,* 752 F.2d 1401, 1404 (9th Cir. 1985).

427 U.S. at 314, 96 S.Ct. at 2567. In this case, Canfield headed the Public Transit Division which had annual revenues of approximately $500,000. Canfield's position involved making and enforcing policy decisions. The Assembly's classification of Canfield's position as an executive one was rational.

D. Intergovernmental Personnel Act Claim.

■ Canfield seeks relief under the IPA claiming that the Personnel Rules violate that statute. The purpose of the IPA is to provide "Federal financial and technical assistance to State and local governments for strengthening their personnel administration in a manner consistent with [merit] principles." 42 U.S.C. § 4701. Under the IPA, state and local governments are required to maintain merit employment systems in order to receive certain federal grants. *See* 42 U.S.C. §§ 4722, 4743 & 4766.

The Eleventh Circuit recently affirmed a district court decision holding that no private cause of action exists under the IPA. *See Howkins v. Caldwell,* 587 F.Supp. 98, 107 (N.D.Ga.1984) (on reh'g), *aff'd mem.,* 749 F.2d 731 (11th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2361, 86 L.Ed.2d 261 (1985). The district court in *Howkins* succinctly stated its rationale:

> According to the [IPA], the United States Office of Personnel Management is the only body capable of enforcing the IPA's substantive provisions, and it accomplishes this through the "termination of grants" section. 42 U.S.C. § 4767. Since this court finds no evidence—clear, affirmative, or otherwise—of Congress' intent to create a private right of action in the IPA, [plaintiff] has no claim under the IPA.

*Howkins,* 587 F.Supp. at 107. We agree with the decision in *Howkins* and conclude that Canfield cannot state a claim under the IPA.

AFFIRMED.