967 F.2d 596
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Rayme VINSON, Plaintiff-Appellant,
v.
CITY OF VALDEZ and Douglas Griffin, Defendants-Appellees.
 No. 91-35244.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 5, 1992.
Decided May 26, 1992.
 
 Before PREGERSON, TROTT and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Rayme Vinson appeals the grants of summary judgment in favor of defendants, the City of Valdez, Alaska, and its City Manager, Douglas Griffin ("defendants"). After being discharged from his position as Chief of the Department of Emergency Services ("DES"), Vinson brought an action for violations of property and liberty rights under the Fourteenth Amendment's due process clause and under 42 U.S.C. § 1983 (1988)[1], breach of the covenant of good faith and fair dealing, retaliatory discharge, and violation of Alaska's Open Meetings Act. In two orders, ruling on cross-motions for summary judgment and on motions for reconsideration, the district court granted defendant's motions for summary judgment on all claims and Vinson brought this timely appeal. We have jurisdiction under 28 U.S.C. § 1291 (1988). We affirm.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 3
 Vinson was employed by the City of Valdez as a police officer from 1978 until 1987. In August 1987, Vinson was selected by an independent panel to serve as Chief of the Department of Emergency Services, a combined police, ambulance, and fire department. In this capacity, Vinson was a permanent, full-time employee. He was directly responsible to the City Manager, Douglas Griffin. His one-year probationary period ended on August 1, 1988. In the following months, Vinson made repeated verbal requests for his one-year evaluation but did not receive it. On October 29, 1988, Griffin requested that Vinson hand over the file on an ongoing arson investigation of a boat owned by the City Clerk and her husband. Vinson informed Griffin that he would not turn over the file because it would constitute an appearance of impropriety. On November 4, Griffin asked Vinson to take a demotion or resign from his current position as Chief of the Department.
 
 
 4
 On November 25, Griffin handed Vinson his one-year evaluation and notified him of the initiation of termination proceedings pursuant to City of Valdez Personnel Regulations § 9.401. On November 29, 1988, Vinson filed grievances concerning his late evaluation and the initiation of termination proceedings pursuant to Personnel Regulations § 8.2.
 
 
 5
 Vinson was given a pre-termination hearing on December 2 and 5, 1988. The hearing was presided over by Griffin. Vinson was not permitted to have counsel present and his request for an open meeting was denied. Griffin acted as the final decision-maker. Vinson was notified on December 13 that his employment would be terminated as of December 31, 1988.
 
 
 6
 Arrangements were made for arbitration before an impartial hearing officer pursuant to Personnel Regulations § 8.2, but were cancelled by Griffin approximately one month later. Griffin did not provide a reason for cancelling arbitration. Vinson then brought this action in state court. Defendants removed the action to federal district court under 28 U.S.C. § 1441 (1988).
 
 STANDARD OF REVIEW
 
 7
 We review the district court's grants of summary judgment de novo. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 110 S.Ct. 3217 (1990). Viewing the evidence and inferences therefrom in the light most favorable to the party opposing summary judgment, we are to determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Tzung v. State Farm Fire and Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989). The district court's interpretation of state law is subject to de novo review, giving no deference to the district court seated in the local jurisdiction. See Salve Regina College v. Russell, 111 S.Ct. 1217, 1220-21 (1991); In re McLinn, 739 F.2d 1395, 1397-98 (9th Cir.1984) (en banc).
 
 DISCUSSION
 I. PROCEDURAL DUE PROCESS CLAIMS
 A. PROPERTY INTEREST
 
 8
 Vinson contends that he was deprived of due process in his discharge as Chief of DES because he was denied the termination and grievance procedures outlined in the City of Valdez Personnel Regulations. He asserts a property interest in continued employment absent just cause for termination. The district court agreed with defendants that, as an administrative officer, Vinson was an "at-will" employee and served only at the pleasure of the city manager.
 
 
 9
 To demonstrate a protectible property interest in continued employment, a plaintiff must show that he had a reasonable expectation or "legitimate claim of entitlement" to the employment. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709 (1972). We look to state law, including city ordinances, to determine whether Vinson has a protectible property interest. Bishop v. Wood, 426 U.S. 341, 344 & n. 7, 96 S.Ct. 2074, 2077 (1976). "[R]ules or regulations concerning discharge or express or implied promises" may also be considered. Merritt v. Mackey, 827 F.2d 1368, 1371 (9th Cir.1987) (citing Roth, 408 U.S. at 577).
 
 
 10
 "Under Alaska law, a person who is employed at the pleasure of his employer has no property interest in continued employment that is protected by due process." Canfield v. Sullivan, 774 F.2d 1466, 1467 (9th Cir.1985) (quoting Breeden v. City of Nome, 628 P.2d 924, 926 (Alaska 1981) (internal quotations omitted). Section 5.3(b) of the City of Valdez Charter provides that administrative officers serve at the pleasure of the city manager. Vinson does not dispute that he is an administrative officer. Rather, he argues that there is no difference between "administrative officers" and "employees" for purposes of applying the Personnel Regulations. He points to a number of provisions in the City Code and Personnel Regulations that, on their face, appear to equate administrative officers with employees. See, e.g., City Code § 2-4 ("city manager shall have the power to appoint and remove officers and employees of the city"); Personnel Regulations § 1.03 (the regulations "apply to all employees subject to the authority of the city manager"). Personnel ordinances "must be construed so that each has meaning and the sections do not conflict with each other." Canfield, 774 F.2d at 1467 (quoting Stanfill v. City of Fairbanks, 659 P.2d 579, 581 (Alaska 1983)). Reading the City Charter, Code, and Personnel Regulations as a whole and construing them so as not to conflict, we find a clear distinction between administrative officers and employees with regard to termination of employment. To construe them otherwise would be to presume that the use of the terms "administrative officer" and "employee" in the City Charter is superfluous. Additionally, such a construction comports with typical public employment arrangements. Administrative officers, as higher level government officials, serve at the pleasure of the city manager, while other employees who are not high level officials are protected from arbitrary discharge. Further, the disciplinary action and termination and grievance procedures relied upon by Vinson were drafted to create a distinction between department heads and employees, indicating that the procedures apply to employees below the department head level only. See, e.g., Personnel Regulations § 9.
 
 
 11
 Moreover, the general rule is that an ordinance is invalid if it conflicts with a City's Charter. Canfield, 774 F.2d at 1469. To the extent that the City Charter conflicts with the City Code and Personnel Regulations, the charter must control.
 
 
 12
 We also reject Vinson's argument that section 8.2 of the Personnel Regulations, providing for grievance procedures, modified his at-will employment agreement, thereby creating a protectible interest in continued employment. See Jones v. Central Peninsula General Hosp., 779 P.2d 783, 787 (Alaska 1989) (employment manuals may modify at-will employment contracts). "Procedural requirements ordinarily do not transform a unilateral expectation into a constitutionally protected property interest." Goodisman v. Lytle, 724 F.2d 818, 820 (9th Cir.1984). A constitutionally protected interest is created only "if the procedural requirements are intended to be a 'significant substantive restriction' " on the decision-making authority of the decision-maker. Id. (citations omitted).
 
 
 13
 The grievance procedures do not place such limits on the authority of the city manager. The purpose of the grievance procedures is to allow employees "the opportunity to have the grievance reviewed for merit." Personnel Regulations § 8.301. In fact, section 1.03 of the Personnel Regulations provides that "[t]hese regulations shall serve as a guideline to the city manager in the exercise of this authority and nothing contained herein is intended to usurp, contravene or otherwise diminish that authority." Moreover, the text of the provision indicates that it was intended to apply to employees below the department head level. Thus, the grievance procedures do not alter Vinson's status as an administrative officer subject to discharge at the will of the city manager.
 
 
 14
 Vinson also argues that because Griffin initially instituted termination proceedings pursuant to Personnel Regulations, a mutually explicit understanding existed between Vinson and Griffin that modified Vinson's at-will status.[2] See Roberts v. College of the Desert, 870 F.2d 1411, 1416 (9th Cir.1988) (a demonstrated understanding between the employer and employee may provide the employee with a property interest sufficient to be accorded due process protection). The record contains no evidence of a mutual understanding between Griffin and Vinson that Vinson would be entitled to the procedural protections afforded to employees by the Personnel Regulations.
 
 
 15
 Accordingly, we agree with the district court that as an administrative officer, Vinson was subject to discharge without cause and without resort to the procedures outlined in the Personnel Regulations.
 
 B. LIBERTY INTEREST
 
 16
 A liberty interest is implicated in the employment termination context if the charge impairs a reputation for honesty or morality. Matthews v. Harney County Or., School Dist. No. 4, 819 F.2d 889, 891-92 (9th Cir.1987). A public employee is entitled to procedural protection for a liberty interest in reputation when charges are made against him, in connection with termination of employment, that impose a "stigma of moral turpitude." Wheaton v. Webb-Petett, 931 F.2d 613, 617 (9th Cir.1991). Procedural protections of due process apply if: (1) the accuracy of the charge is contested; (2) there is some public disclosure of the charge; and (3) the charge is made in connection with termination of employment. Matthews, 819 F.2d at 891-92. No process is due if there is no public disclosure of the reasons for termination. Bishop, 426 U.S. at 348, 96 S.Ct. at 2079.
 
 
 17
 In the present case, there is no dispute over the first and third factors. Vinson, however, alleges that defendants informed the editor of the local newspaper of the charges of dishonesty and disloyalty contained in the pre-termination notice of November 25, 1988. On motion for reconsideration, the district court granted summary judgment in defendants' favor, finding no evidence to support Vinson's assertion that the newspaper editor knew of the reasons for Vinson's termination.
 
 
 18
 A defendant's motion for summary judgment is not defeated absent some concrete evidence from which a reasonable jury could return a verdict in the plaintiff's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The plaintiff cannot merely assert that the jury might disbelieve the defendant's denial of charges. Id. "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." Id.
 
 
 19
 Vinson failed to present affidavits, or any evidence, from which an inference could reasonably be drawn that defendants publicized the specific charges underlying his termination. Hence, he failed "to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See also Fleisher v. City of Signal Hill, 829 F.2d 1491, 1495 (9th Cir.1987), cert. denied, 485 U.S. 961 (1988) (record contains no evidence that employer disseminated false and defamatory charges relating to plaintiff's termination). Accordingly, the district court did not err in granting summary judgment in favor of defendants on the liberty interest claim.
 
 II. COVENANT OF GOOD FAITH AND FAIR DEALING
 
 20
 Alaska recognizes the existence of an implied covenant of good faith and fair dealing in all at-will employment relationships. Mitford v. de Lasala, 666 P.2d 1000, 1006-07 (Alaska 1983). At a minimum, the covenant requires "that an employer not impair the right of an employee to receive the benefits of the employment agreement." Jones, 779 P.2d at 789. The Alaska Supreme Court has also held that the covenant is breached by a retaliatory discharge in violation of public policy. Luedtke v. Nabors Alaska Drilling, Inc., 768 P.2d 1123, 1130 (Alaska 1989) (refusal of employees to take drug test although privacy right was overcome by competing policy of public safety). See also Reed v. Municipality of Anchorage, 782 P.2d 1155 (Alaska 1989) (whistle blowing); Knight v. American Guard & Alert, Inc., 714 P.2d 788 (Alaska 1986) (same).
 
 
 21
 Vinson argues that defendants breached the covenant of good faith and fair dealing in two respects. First, he contends that the failure of defendants to afford him the termination and grievance procedures in the City of Valdez Personnel Regulations deprived him of benefits to which he was entitled. Second, he argues that he was discharged in retaliation for refusing to hand over an ongoing arson investigation file to the city manager in violation of public policy.
 
 
 22
 We have already concluded that the Personnel Regulations are not applicable to at-will administrative officers such as Vinson. Thus, defendants could not have violated the implied covenant of good faith and fair dealing by failing to follow the procedures for discharge under the Personnel Regulations. See Jones, 779 P.2d at 789. Summary judgment was correct on this point.
 
 
 23
 Under Alaska law, a breach of the implied covenant of good faith and fair dealing occurs if the employer discharges the employee in retaliation for conduct protected by public policy. Eldridge v. Felec Services, Inc., 920 F.2d 1434, 1437 (9th Cir.1990); Reed, 782 P.2d at 1158. We look to "the State's constitution and statutes and, when they are silent, [to] its judicial decisions" to determine whether the employee's conduct is protected by public policy. Luedtke, 768 P.2d at 1132 (quoting Palmateer v. International Harvester, 421 N.E.2d 876, 878-79 (1981)). Vinson has not cited, nor have we found, anything in the Constitution, statutes, or common law of Alaska to support Vinson's refusal to turn over to Griffin the file on the ongoing arson investigation. Therefore, the district court was correct in granting summary judgment in favor of defendants.
 
 III. OPEN MEETINGS ACT
 
 24
 The district court held that the Open Meetings Act, AS 44.62.310-312, applied to pre-termination hearings, but that Vinson was not procedurally entitled to such a meeting. We agree that Vinson was not entitled to a pre-termination hearing. We express no opinion on whether pre-termination hearings pursuant to City of Valdez Personnel Regulations are required to be open to the public under Alaska's Open Meetings Act.
 
 
 25
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Our discussion combines Vinson's due process and § 1983 claims as the § 1983 claims are predicated upon a violation of due process
 
 
 [2]
 Vinson also argues that principles of equitable estoppel should prevent defendants from refusing to carry on with their initial decision to provide termination proceedings in accord with Personnel Regulations. The cases cited by Vinson do not support his claim. Municipality of Anchorage v. Higgins, 754 P.2d 745, 748 (Alaska 1988), is inapposite because the case was remanded to the trial court to make factual findings. Here, the district court already found that no prejudice resulted from the initiation of termination proceedings. Municipality of Anchorage v. Schneider, 685 P.2d 94, 98 (Alaska 1984), is similarly inapposite. In Schneider, the plaintiffs had expended large sums of money in reliance on a municipal code. Vinson has produced no evidence that he relied to his detriment on the initiation of termination procedures