John STANFILL, James Wulff, Larry
Long, and Robert Langlotz,
Appellants,

v.

CITY OF FAIRBANKS, Appellee.

No. 6321.

Supreme Court of Alaska.

Feb. 18, 1983.

Joseph W. Sheehan, Fairbanks, for appellants.

Dennis M. Bump and D. Randall Ensminger, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

COMPTON, Justice.

John Stanfill, James Wulff, Larry Long and Robert Langlotz (collectively referred to hereinafter as "Stanfill") were terminated from their employment with the City of Fairbanks. Stanfill appeals from the summary judgment granted by the superior court in favor of the City. The primary issue raised by Stanfill is whether his termi-

nation violated the City of Fairbanks Personnel Ordinance No. 3786. For the reasons set forth below, we find that the superior court's granting of summary judgment was in error.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Municipal Utilities System (MUS)[1] employees of the City of Fairbanks are, at least in part, represented by the Fairbanks AFL–CIO Joint Crafts Council. In the winter of 1979–80, MUS and the Joint Crafts Council entered into labor negotiations to establish a new contract and resolve outstanding grievances. On January 8, 1980, the MUS employees represented by the Joint Crafts Council went on strike against the City.

After considering various alternatives in handling the strike situation, the City gave notice to striking employees on January 9, 1980, that they would be discharged from their employment if they refused to return to work. Pursuant to this notice, the striking employees were discharged on January 11, 1980. Thereafter, Stanfill was hired to work in the City's sewage treatment system.

Stanfill was told by an MUS manager that he was being hired as a permanent employee. In light of the ongoing strike, however, Stanfill was also informed that the City could be ordered by the superior court to rehire the striking employees. In that case, Stanfill's position would not necessarily be permanent.

On February 12, 1980, the Fairbanks City Council met to discuss a settlement offer proposed by the Joint Crafts Council. One of the terms of the settlement offer was that the striking employees be allowed to return to their former positions. The council voted to accept all of the terms of the offer. Thereafter, on February 13, 1980, Stanfill was laid off from his employment.

---

1. The Municipal Utilities System provides municipal services, including telephone, water, sewer, steam and electricity, to the City of Fairbanks. As a city employer, MUS's employ-

ment practices are subject to Personnel Ordinance No. 3786, which prescribes the personnel policies and regulations governing city employment.

The stated reason for his layoff was "lack of work."

On April 22, 1980, Stanfill filed a complaint against the City, alleging misrepresentation and breach of contract. The City subsequently moved for and was granted summary judgment. This appeal followed.

## II. DISCUSSION

Stanfill argues that his termination from employment with the City was unjustified and in violation of the City of Fairbanks Personnel Ordinance. Specifically, Stanfill contends that his termination does not come within the meaning of a "layoff" as defined by the Ordinance. Although Stanfill concedes that his employment was subject to the Ordinance's provisions relating to the probationary period of new employees, he contends that termination within this period is limited to "dismissal for cause."

■ The standard to be applied by the superior court on motions for summary judgment is set forth in Alaska Civil Rule 56(c). A motion for summary judgment is to be granted only when the record indicates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Alaska R.Civ.P. 56(c). In ruling on a motion for summary judgment, all reasonable inferences must be drawn in favor of the non-moving party and against the movant. *Swenson Trucking & Excavating, Inc. v. Truckweld Equipment Co.,* 604 P.2d 1113, 1116 (Alaska 1980). The burden of proving the absence of any genuine issues of material fact is upon the moving party. *Champion Oil Co. v. Herbert,* 578 P.2d 961, 963 (Alaska), *cert. denied,* 439 U.S. 980, 99 S.Ct. 565, 58 L.Ed.2d 650 (1978). It is only if the City established as a matter of law that Stanfill did not have a contractual right not to be dismissed under the Personnel Ordinance that the granting of summary judgment in favor of the City would be appropriate.

■ Resolution of this case requires interpreting the provisions of the Personnel Ordinance that relate to the termination of employees from city employment. When interpreting these provisions, we are guided by the general principles of statutory construction. *Concerned Citizens of South Kenai Peninsula v. Kenai Peninsula Borough,* 527 P.2d 447, 454 (Alaska 1974). Accordingly, the relevant sections of the Ordinance must be construed so that each has meaning and the sections do not conflict with each other. *Dresser Industries, Inc. v. Alaska Department of Labor,* 633 P.2d 998, 1003 (Alaska 1981), *cert. denied,* 455 U.S. 1019, 102 S.Ct. 1716, 72 L.Ed.2d 137 (1982).

### A. *"Layoff" as Defined by the Personnel Ordinance*

Section 2.523, Rule VII(5),[2] of the Personnel Ordinance designates the permissible reasons for laying off an employee. Stanfill's termination notice stated that he was laid off due to a "lack of work." Stanfill persuasively maintains that he was not laid off due to a lack of work because employees were still needed to maintain the treatment sewage facility where he was working. Stanfill argues that his termination was therefore not for a permissible reason under Rule VII(5).

■ One of the permissible reasons for laying off an employee is that a "material change" has occurred in the "organization." Section 2.523, Rule VII(5). The City contends that the collective bargaining agreement negotiated with the union created a material change in the organization of the sewage treatment plant, justifying the laying off of employees. We disagree. The City presented no evidence to the superior

---

**2.** Rule VII(5) of § 2.523 provides:

*Layoff.* The department head, upon approval of the city manager, or his designee, may lay off an employee when he deems it necessary by reason of shortage of funds or work, the abolition of the position, or other material changes in the duties or organization, or for related reasons which are outside the employee's control and which do not reflect discredit upon the service of the employee. The duties performed by any employee laid off may be reassigned to other employees already working.

court that the sewage treatment system underwent any material change in its organization as a result of the collective bargaining agreement. The only change that occurred as a result of the bargaining agreement was a change in the composition of the City's personnel. We therefore cannot find that the collective bargaining agreement created a change in the system's organization.

■ Rule VII(5) specifies that an employee may be laid off if it is necessary because of a "shortage of funds or work, the abolition of the position, or other material changes in the duties or organization, *or for related reasons* which are outside the employee's control and which do not reflect discredit upon the service of the employee." (Emphasis added.) The City interprets "related reasons" as meaning any good reason, which it contends includes the collective bargaining agreement in this case. We disagree with this interpretation. We believe that "related reason" means exactly what it says—a reason related to any of the reasons previously set forth in the rule. Thus, Rule VII(5) permits an employee to be laid off only for reasons related to a "shortage of funds or work, the abolition of the position, or other material changes in the duties or organization." Stanfill was not laid off for any reason related to these designated reasons.

■ In further opposition to the City's arguments, we note that Rule VII(5) permits the reassignment of duties performed by the laid-off employee to other employees "*already working.*" Implicit in this provision is the notion that layoffs are justified by the occasional need to decrease the number of employees and to restructure the duties of the *remaining employees.* This provision does not authorize the City to lay off an employee for the sole purpose of replacing him with and reassigning his duties to an employee who has been previously terminated for going on strike. For these reasons, we find that Stanfill's layoff does not fall within the meaning of Rule VII(5) of section 2.523.[3]

## B. *Dismissal Within the Probationary Period*

■ Although Stanfill's termination notice reflected that he was "laid off," the City argues that Stanfill could have been dismissed without cause because he was still within his probationary period. Stanfill concedes that at the time he was terminated he was subject to the provisions relating to an employee's probationary period. Stanfill argues, however, that even during the probationary period, an employee may be dismissed only "for cause" relating to the employee's work performance. We agree with Stanfill that the Fairbanks Personnel Ordinance requires a dismissal within the probationary period to be for cause related to the employee's work performance.

Sections 2.512 and 2.523 of the Personnel Ordinance set forth the provisions relating to an employee's probationary period. Section 2.512 states that all employees are subject to a probationary period of six months.[4] Section 2.523, Rule VI(1), states that the object of the probationary period is to allow the employer an opportunity to "observe closely the employee's work" and "to reject

---

**3.** The City further argues that pursuant to AS 09.65.070(d)(2) Stanfill was barred from bringing his contract claim against the City because this section immunizes the City from liability. The statute provides in relevant part as follows: "(d) No action for damages may be brought against a municipality ... if the claim ... (2) is based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty by a municipality ... whether or not the discretion involved is abused ...." We find the City's argument to be without merit. We do not believe this stat-

ute was intended to or does immunize the City from liability for damages resulting from the City's failure to follow its own rules governing its relations with its employees.

**4.** In relevant part, § 2.512 states: *"Probationary Period.* The rules and regulations shall provide that all original and promotional appointments shall be for a probationary period of six (6) months for all employees .... During this probationary period an employee may be dismissed at any time without right of appeal or hearing in any manner."

any employee whose work performance does not meet required work standards." [5] We interpret this provision as indicating that the reasons for the probationary period relate solely to the employee's ability to perform his duties. Section 2.512 grants to the employer the right to dismiss a probationary employee upon a determination that the employee is unable to perform his duties. Section 2.523, Rule VI(3), expressly provides for such dismissals:

> *Dismissal.* During the probationary period the department head may remove an employee who is unable or unwilling to perform the duties of the position satisfactorily or whose habits and dependability do not merit his continuance in the service. Any employee removed during the probationary period does not have the appeal rights outlined in Rule VII.

Section 2.512 does not expressly state whether "cause" is required to terminate an employee; however, Rule VI(3) sets forth the reasons for which an employee may be dismissed: inability or unwillingness to perform the job or unsuitability for the position. Viewing this section in light of the objective of the probationary period, we conclude that the City may dismiss a probationary employee only "for cause." Rule VI(3) indicates that the cause for dismissal must be related to the employee's ability to perform his work or to his suitability for the position. This interpretation is supported by the Personnel Ordinance's definition of dismissal as "the separation from city employment for cause." Section 2.502(18).[6] We recognize that section 2.523, Rule VI(3), states that probationary employees, upon dismissal, do not have any right of appeal or hearing. We do not, however, interpret this section's denial of

such rights as authorization for dismissing employees for reasons unrelated to any cause.

Based on our interpretation of sections 2.512 and 2.523, we conclude that the City of Fairbanks Personnel Ordinance requires dismissals within the probationary period to be for cause related to the employee's job performance. The reason given for Stanfill's termination indicates that his termination was either without cause or for a cause unrelated to his ability to perform his designated duties. In view of this, we conclude that the superior court's order of summary judgment was improvidently granted.

We therefore REVERSE and REMAND this case for further proceedings consistent with this opinion.

---

**5.** Section 2.523, Rule VI(1), states:

> *Object.* The probationary or working test period is an integral part of the examination process. It shall be utilized to observe closely the employee's work, to secure the most efficient adjustment of a new or promoted employee to his position, and to reject any employee whose work performance does not meet required work standards.

**6.** The City maintains that the word "dismissal" was not intended to be given the same meaning in the probationary section as it was in section

2.502. The City contends that probationary employees are "removable" without cause. Section 2.502(36) defines "removal" as "the separation of any employee on probation . . . ." We find no support in this general definition for the City's position. Based on the specific probationary provisions and the consistent use of the word "dismissal" within them, we conclude that the drafters intended probationary employees to be "dismissed" pursuant to the guidelines set forth in the relevant provisions of the Personnel Ordinance.