**Penny E. HARRINGTON, Plaintiff,**

v.

**CITY OF PORTLAND; J.E. (Bud) Clark; Sidney I. Lezak; John C. Beatty, Jr.; H.D. Watson; Raymond M. Tercek; Michael McPhee; and Charles Karl, Defendants.**

**Civ. No. 87–516–FR.**

United States District Court, D. Oregon.

April 26, 1988.

On Motion For Entry of Final Judgment Sept. 9, 1988.

Tom Steenson, Steenson, Fontana & Schumann, Linda K. Eyerman, Gaylord, Thomas & Eyerman, Portland, Or., for plaintiff.

Harry Auerbach, Deputy City Atty., Portland, Or., for defendants City of Portland and J.E. (Bud) Clark.

Don H. Marmaduke, Barbee B. Lyon, Tonkon, Torp. Galen, Marmaduke & Booth, Portland, Or., for defendants Sidney I. Lezak, John C. Beatty, Jr., and H.D. Watson.

John C. Ray, Thompson, Adams, DeBast & Ray, Beaverton, Or., for defendant Raymond M. Tercek.

Anna J. Brown, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, Or., for defendant Michael McPhee.

John Folawn, Holmes, DeFrancq & Schulte, P.C., Portland, Or., for defendant Charles Karl.

FRYE, District Judge:

In the matters before the court, defendants City of Portland and its Mayor, J.E.

(Bud) Clark, move the court to dismiss plaintiff, Penny E. Harrington's, amended complaint pursuant to Fed.R.Civ.P. 12(b)(6).

## BACKGROUND

Harrington brings this action against defendants City of Portland and Mayor Clark; Special Review Commission members Sidney I. Lezak, John C. Beatty, and H.D. Watson; and Portland Police Officers Raymond Tercek, Michael McPhee and Charles Karl, alleging liability for damages under 42 U.S.C. § 1983 and various state law claims. In opinions dated October 23, 1987, 677 F.Supp. 1491, and January 8, 1988, 698 F.Supp. 209, this court dismissed all claims against defendants, with the exception of Harrington's equal protection claim against the City and Mayor Clark. On February 1, 1988, Harrington filed an amended complaint realleging all claims against all defendants and adding new claims. On April 11, 1988, after oral argument, this court dismissed the claims against defendants Lezak, Beatty, Watson, Tercek, McPhee and Karl.

Harrington makes the following general allegations in her amended complaint:

## III.

## GENERAL ALLEGATIONS

11. On or about September 5, 1964, Plaintiff was hired by Defendant City of Portland to work as a Policewoman in its Bureau of Police; and Plaintiff was continuously employed by the Bureau of Police until on or about July 1, 1986.

12. During her tenure in the Bureau of Police, Plaintiff was promoted from Policewoman to Police Detective, Police Sergeant, Police Lieutenant and Police Captain, having qualified for these positions through competitive examinations administered by the Civil Service Board of Portland, and through merit and fidelity in service. With each promotion, Plaintiff became the first woman to be employed by Defendant City of Portland as a Police Detective, Police Sergeant, Police Lieutenant and Police Captain.

13. On or about January 24, 1985 Plaintiff was appointed by Defendant Clark to serve as Chief of Police. With this appointment, Plaintiff became the first woman to be employed by Defendant City of Portland as Chief of Police and the first woman to be employed as Chief of Police in any major city in the United States.

14. While serving as Chief of Police, Plaintiff had a liberty interest protected by the due process clause of the Fourteenth Amendment of the United States Constitution to be free from false charges made under color of law which involved or implied personal and professional dishonesty, immorality or malfeasance in office, which adversely reflected on and damaged her standing and ability to continue as Chief of Police, her standing and ability to continue her permanent employment as a Police Captain, and her career and future in her profession.

15. While serving as Chief of Police, Plaintiff had a property interest in her reputation in the community and in the field of law enforcement protected by the due process clause of the Fourteenth Amendment of the United States Constitution, based on Article 1, Section 10 of the Oregon Constitution.

16. While serving as Chief of Police, Plaintiff had a property interest in her employment as Chief of Police protected by the due process clause of the Fourteenth Amendment of the United States Constitution, in that her employment was subject to an express and implied-in-fact contract based on explicit and implicit representations by Defendant Clark which created a mutual understanding between Plaintiff and Defendant Clark that Plaintiff would continue to serve as Chief of Police as long as Defendant Clark was Mayor, unless removed for cause.

17. While serving as Chief of Police, Plaintiff was considered to be on approved leave of absence from her permanent employment by Defendant City of Portland as a Police Captain; and Plaintiff had a property interest in her permanent employment protected by the due

process clause of the Fourteenth Amendment of the United States Constitution, in that her employment was subject to an express and implied-in-fact contract based on Chapter 4 of the Charter of the City of Portland which prohibits discharge of a permanent employee without cause.

18. On or about June 1, 1986, Plaintiff was forced to resign as Chief of Police, and she was also forced to resign from her permanent employment as a Police Captain because working conditions within the Bureau of Police had become intolerable for Plaintiff. These resignations were not to be effective until September 1, 1986 in order to give Defendant City of Portland time to make the arrangements necessary to pay Plaintiff the early retirement pension more fully described below. Between June 1, 1986 and September 1, 1986, Plaintiff was to be on administrative leave; however, Defendant City of Portland paid Plaintiff only through June 30, 1986. Since July 1, 1986, Plaintiff has not been on the payroll of the Bureau of Police or any other City agency.

(Plaintiff's Amended Complaint, pp. 3–5).

Defendants Clark and the City move the court to dismiss Harrington's amended complaint pursuant to Fed.R.Civ.P. 12(b) on the grounds that it fails to state a claim for which relief can be granted. The court will grant such a motion only where it appears to a certainty under existing law that no relief can be granted under any set of facts. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The issue is not whether Harrington is likely to succeed on the merits, but whether she is entitled to proceed beyond the threshold in attempting to establish her claims. *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir.1978). The court must construe all allegations in Harrington's favor in deciding this motion.

## ANALYSIS

Harrington's amended complaint states the following claims for relief against the City of Portland and/or Mayor Clark:

1. second claim for relief—against the City of Portland and Mayor Clark for denial of equal protection;

2. third claim for relief—against the City of Portland and Mayor Clark for denial of due process;

3. fourth claim for relief—against Mayor Clark for breach of contract and interference with employment relationships;

4. fifth claim for relief—against the City of Portland for breach of express contract and breach of implied contract;

5. eighth claim for relief—against the City of Portland for breach of employment contract; and

6. ninth claim for relief—against the City of Portland for breach of employment contract.

### 1. *Second Claim for Relief*

In her second claim for relief, Harrington alleges that the City of Portland and Mayor Clark deprived her of her constitutional right to the equal protection of the law by discriminating against her on the basis of sex. Harrington alleges as the factual basis for this claim that Mayor Clark would not have appointed a Special Review Commission to undertake a public investigation of her acts and conduct had she not been the first woman to be appointed Chief of Police for the City of Portland.

In its opinion of October 23, 1987, this court stated:

In determining whether Harrington has adequately stated a claim for sex discrimination, the court must look at the totality of the relevant facts pleaded in the light most favorable to Harrington. Harrington has alleged that the City of Portland has a documented history of discrimination against women in the Portland Police Bureau. She alleges a *de facto* pattern and practice of discriminating on the basis of sex against women employed in the Portland Police Bureau. She alleges that because she is a woman, Mayor Clark established a Special Review Commission to review actions taken by her as Chief of Police and to review her personal associations thereby sub-

jecting her to more scrutiny than male Chiefs of Police and thereby judging her by a different and extraordinary standard.

Mayor Clark has the power to establish a Special Review Commission under the terms of the Portland City Charter, and he can use this power selectively. He cannot, however, use this power if his reason for using it is the sex of the individual selected for review. The issue before this court is not whether Harrington is likely to succeed on the merits of her case, but whether she is entitled to proceed beyond this motion to dismiss. The court cannot say as a matter of law at this stage in the proceedings that she can prove no set of facts that may entitle her to prevail in her claim of sex discrimination. The court finds that Harrington is entitled to proceed beyond this motion to dismiss based upon the allegations of her complaint.

*Id.* at 12–13.

The allegations of the amended complaint relevant to Harrington's second claim for relief are the same as those alleged in the original complaint. The City of Portland and Mayor Clark argue that the court should reconsider its original ruling on the grounds that Mayor Clark did not have any intent to discriminate against Harrington on the basis of sex when he established the Special Review Commission. The issue of the intent of Mayor Clark is a question of fact. As such, the court adheres to its original ruling. The motion to dismiss the second claim for relief is denied.

### 2. *Third Claim for Relief*

Harrington brings her third claim for relief against the City of Portland and Mayor Clark charging that they deprived her of liberty and property interests protected by the due process clause of the Fourteenth Amendment of the United States Constitution.

### A. Property

Harrington asserts that the actions of the City of Portland and Mayor Clark in setting up the Special Review Commission deprived her of three property interests:

1. a property interest in her reputation as provided by Article 1, Section 10 of the Oregon Constitution;

2. a property interest in her continued employment as Chief of Police based upon an express and an implied-in-fact contract; and

3. a property interest in her continued employment as a Police Captain.

### 1. *Property Interest in Reputation:*

Article 1, Section 10 of the Oregon Constitution provides:

> Administration of justice. No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation.

Harrington argues that she has a protected property right in her reputation in the community and in the field of law enforcement created by Article 1, Section 10 of the Oregon Constitution which must be afforded due process under the Fourteenth Amendment to the United States Constitution.

The City of Portland and Mayor Clark argue that Article 1, Section 10 of the Oregon Constitution does not create any rights, but only guarantees "recognized rights." The City of Portland and Mayor Clark assert that the source of Harrington's alleged property right in her reputation in the community comes from outside Article 1, Section 10 of the Oregon Constitution, and that Harrington has no property right in her reputation arising from this constitutional provision.

 Article 1, Section 10 of the Oregon Constitution does not create rights; it only protects established rights. *Smith v. Smith,* 205 Or. 286, 296, 287 P.2d 572 (1955). Harrington cannot rely upon this constitutional provision to establish a property interest. Oregon law provides a remedy for injury to reputation in the common law tort of defamation. To the extent that

there is a remedy under the United States Constitution for injury to reputation, it is as a liberty interest and not as a property interest.

Harrington's claim under Article 1, Section 10 of the Oregon Constitution is dismissed.

### 2. *Property Interest in Employment as Chief of Police:*

Harrington alleges that she acquired a property interest in her continued employment as Chief of Police based upon the express and/or implied representations of Mayor Clark that she could continue as Chief of Police as long as Clark was Mayor of the City of Portland unless she was removed for cause. Harrington made the same allegation in the original complaint with the exception of the qualification that she could be removed for cause. In its opinion of October 23, 1987, the court concluded that she did not have a property interest in continued employment as Chief of Police. The court stated:

A property interest in employment can be created by ordinance or by implied contract. *Bishop v. Wood,* 426 U.S. 341, 345, 96 S.Ct. 2074 [2077, 48 L.Ed.2d 684] (1976). To determine whether Harrington possessed a property interest in her employment, the court must look to state law, including the Charter of the City of Portland. *See Canfield v. Sullivan,* 774 F.2d 1466, 1467 (9th Cir.1985).

The relevant section of the Charter of the City of Portland is section 4–101, which provides in part that "[t]he Mayor shall appoint a Chief of Police, who shall have had ten (10) years of active police service. The Chief of Police shall be subject to removal by the Mayor." The Charter of the City of Portland provides in no uncertain terms that the Chief of Police serves at the pleasure of the Mayor and is removable at will. Nonetheless, Harrington asserts that Mayor Clark altered the terms of the City Charter through an implied contract with her not to discharge her during his term as Mayor without affording her procedural due process—that is, without good cause

and an opportunity to be heard. Harrington's complaint alleges that public statements of support made by Clark upon which she relied amount to an implied contract on the part of Mayor Clark and the City of Portland not to discharge her without procedural due process.

Assuming without deciding that the complaint alleges an implied contract, the court must decide whether Mayor Clark could legally enter into a contract with Harrington—explicit or implied—which restricts the free exercise of the discretion vested in him by the Portland City Charter to remove the Chief of Police at will.

A public officer must always guard and protect the interests of the public and is not at liberty to encumber the public powers given to him through the use of private contracts at the expense of the public. A public official who has the authority to appoint another to a position cannot encumber that power at the expense of the public. In *Hall v. Pierce,* 210 Or. 98 [307 P.2d 292] (1957), a newly elected Congressman allegedly entered into a contract with his wife to appoint her as his secretary. In discussing the legality of the contract, the court cited to the principle stated in 42 Am.Jr., Public Officers § 84, p. 945, as follows:

A public office is not property, but the mere right to exercise a public function. It is not the subject of sale, purchase, or encumbrance, and cannot be acquired in any such manner; nor can the unearned salary or compensation of a public officer ordinarily be sold or assigned.

A public office should be conferred solely upon consideration of ability, integrity, fidelity, and fitness for the position, and it is the duty of a public officer having the power of appointment to make the best appointment in his power. Consequently he should not be deprived of the exercise of his best judgment by any contract previously made or obligation previously assumed.

The court in *Hall* concluded that the alleged agreement, if made, would have

been illegal. The court found that "[t]he power possessed by a public officer must always be exercised for the public good exclusively." 210 Or. at 116, [307 P.2d 292]. The *Hall* court concluded that the power of appointment or removal can never become entangled with financial ventures of the officer and the appointee, and that the alleged agreement would have been illegal and unenforceable.

The alleged implied contract between Harrington and Mayor Clark is for the private good of Harrington and not for the public good exclusively. The alleged implied contract between Harrington and Mayor Clark would encumber the power of removal at will vested in Mayor Clark by the City Charter. The City Charter specifically gives Mayor Clark the discretion to remove the Chief of Police as he sees fit for the public good, unrestricted by the protections of procedural due process. If, as Harrington alleges, Mayor Clark altered his power through an implied contract with her, such a contract would be unenforceable by Harrington. Public officers may not make agreements with others which restrain their public actions or their freedom to make discretionary decisions exclusively for the good of the public. Harrington could not acquire by an implied contract with Mayor Clark any property interest in her job as Chief of Police.

*Id.* at 18–21 (footnote omitted).

Harrington argues that the court's prior ruling is no longer applicable because she has now alleged that the Mayor could terminate her for good cause. Harrington asserts that a good cause restriction on the Mayor's otherwise unconditional ability to remove the Chief of Police is not inconsistent with Section 4–101 of the City Charter or with the *Hall* case.

█ The court finds that the allegation that Mayor Clark could terminate Harrington for cause does not alter the result in this case. The City Charter gives the mayor the ability to replace the Chief of Police at will. Any restrictions placed upon this power by the mayor materially alters the terms of the City Charter without the prop-er procedures for doing so. Harrington has no property interest in her continued employment as Chief of Police.

### 3. *Property Interest in Continued Employment as Police Captain:*

Harrington contends that her property interest in the position of Police Captain derives from her status as a classified civil service employee under the Portland City Charter and the Portland City Code. Harrington alleges that as a result of the unconstitutional acts and conduct of the defendants working conditions within the Bureau of Police became intolerable for her, and she was therefore constructively discharged from her permanent position as Police Captain.

Defendants argue that Harrington's termination as Chief of Police did not affect her employment as Police Captain. Defendants contend that Harrington still retains her position as Police Captain.

Harrington has a property interest in her continued employment as Police Captain. Harrington alleges that she was constructively discharged from her position as Police Captain by the unconstitutional actions of Mayor Clark in removing her as Chief of Police. If the trier of fact concludes that Harrington has suffered a constitutional injury inflicted by the City of Portland and Mayor Clark in removing her as Chief of Police, it becomes a question of fact as to whether this constitutional injury caused her to be constructively discharged from the position of Police Captain.

In summary, that part of Harrington's third claim for relief against the City of Portland and Mayor Clark which relates to her allegations of constructive discharge as Police Captain will not be dismissed. That part of Harrington's third claim for relief which relates to Harrington's property interest in her employment as Chief of Police and her property interest in her reputation are dismissed.

### B. Liberty

Harrington contends that she has been deprived of her liberty interests without due process of law by the City of Portland

and Mayor Clark. Harrington's amended complaint alleges:

60. As a direct result of the acts and conducts of Defendants City of Portland, Clark, Lezak, Beatty and Watson, and each of them, a stigma of personal and professional dishonesty, immorality and malfeasance in office was imposed upon Plaintiff, which seriously damaged Plaintiff's standing and ability to continue as Chief of Police, her standing and ability to continue her permanent employment as a Police Captain, and her career and future in her profession.

61. As a direct result of the acts and conducts of Defendants City of Portland, Clark, Lezak, Beatty and Watson, and each of them, Plaintiff suffered injury to her reputation in the community and in the field of law enforcement.

(Plaintiff's Amended Complaint, pp. 16–17).

Harrington's amended complaint alleges that Mayor Clark set up the Special Review Commission to undertake a public investigation of the following charges:

(a) That Plaintiff's husband compromised the Northwest Organized Crime Drug Enforcement Task Force ("Task Force") investigation of Robert (Bobby) Lee by disclosing or "leaking" confidential information to Lee, including the fact that Lee was a Task Force suspect;

(b) That Plaintiff compromised the Task Force investigation of Lee by disclosing or "leaking" confidential information to her husband, including the fact that Lee was a Task Force suspect;

(c) That Plaintiff allowed her husband to compromise the Task Force investigation of Lee by disclosing or "leaking" confidential information to Lee, including the fact that Lee was a Task Force suspect;

(d) That Plaintiff and her husband made these disclosures with the intention of hindering or otherwise interfering with the Task Force investigation and prosecution of Lee; and

(e) That Plaintiff had de-emphasized drug enforcement in the Portland Police Bureau in order to protect Lee and her other drug-connected acquaintances from investigation and prosecution.

(Plaintiff's Amended Complaint, pp. 14–15).

In order to adequately plead a deprivation of a liberty interest, Harrington must allege facts showing a tangible alteration in her employment status which resulted in injury to her good name, honor or integrity and which imposed a stigma that effectively foreclosed future employment opportunities. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). In her amended complaint, Harrington alleges that a number of serious and false charges were made against her which violate her liberty interest under the due process clause of the Fourteenth Amendment to the United States Constitution. *See Stretten v. Wadsworth Veterans Hospital*, 537 F.2d 361, 365–66 (9th Cir.1976). Harrington alleges that these false charges, which preceded her dismissal as Chief of Police, have damaged her ability to continue employment in the law enforcement field.

■ A person who is deprived of a liberty interest based on damage to reputation is entitled to an opportunity to refute the charge against her and to clear her name. *Codd v. Velger*, 429 U.S. 624, 627, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977) (per curiam). Mayor Clark and the City of Portland argue that the proceeding before the Special Review Commission constituted adequate due process as a matter of law and that this court should dismiss Harrington's claims on the pleadings.

Harrington alleges in the amended complaint, at paragraph 58, pp. 15–16, as follows:

58. Between on or about March 27, 1986 and on or about May 30, 1986, the Special Review Commission heard testimony and/or received evidence, during the course of which Defendants Lezak, Beatty and Watson individually and jointly:

(a) Exceeded the bounds of their authority by expanding the scope of the Special Review Commission to issues which were outside the charges;

(b) Failed and refused to notify Plaintiff that they had expanded the scope of the Special Review Commission;

(c) Failed and refused to notify Plaintiff when they were taking secret testimony, and failed and refused to permit Plaintiff to attend, to know the identity of the witnesses or to review the substance of the secret testimony;

(d) Failed and refused to permit Plaintiff to cross-examine witnesses; and

(e) Made general findings and a recommendation concerning Plaintiff which were beyond the scope of their authority.

■ While due process by its nature requires flexible procedures, Harrington was entitled to notice of the charges against her and an opportunity to present her side of the story. *Board of Regents*, 408 U.S. at 573, 92 S.Ct. at 2707. While there is no constitutional right to cross-examine, as such, in the context of a due process hearing, it is a question of fact here whether Harrington was provided notice of the charges against her and whether she was allowed to present her side of the story. Construing the allegations in the amended complaint in the light most favorable to Harrington, the court cannot say as a matter of law that Harrington has stated no set of facts under which relief could be granted.

Harrington's third claim for relief against the City of Portland and Mayor Clark is dismissed as it relates to her property claim in the position of Chief of Police and denied as it relates to her property claim in the position of Police Captain. Harrington's third claim for relief against the City of Portland and Mayor Clark is denied as it relates to her liberty interest based on damage to her reputation.

### 3. *Fourth Claim for Relief*

Harrington's fourth claim for relief against Mayor Clark has two counts: 1) breach of contract, and 2) interference with employment relations.

#### A. Breach of Contract

Harrington alleges that on or about June 1, 1986, she and Mayor Clark agreed as follows:

(a) That Plaintiff would resign from the Bureau of Police effective September 1, 1986;

(b) That before September 1, 1986, Defendant Clark would prepare and present to the City Council an ordinance which would provide Plaintiff with an early retirement pension, to be paid in monthly installments beginning on or before September 1, 1986, in an amount equal to the retirement pension which Plaintiff would have received, had she continued to be employed by the Bureau of Police until she reached retirement age; and

(c) That Defendant Clark would recommend to the City Council that such an ordinance be approved.

(Plaintiff's Amended Complaint, p. 18).

Harrington alleges that Mayor Clark breached the agreement by failing to prepare and present to the City Council for approval the ordinance needed to fulfill the terms of the agreement and by failing to recommend to the City Council that such an ordinance be approved.

Mayor Clark argues that as an agent for a disclosed principal, he cannot be held personally liable for this purported contract. Mayor Clark argues that under the Portland City Charter, he has absolute discretion to appoint and remove the Chief of Police, and that any contract such as the one Harrington alleges here would limit his ability to exercise his discretion and would therefore be void and unenforceable. Mayor Clark also argues that the legislative power of the City Council must be exercised solely for the public good, and a contract to introduce legislation for the benefit of a private person is illegal and unenforceable.

Harrington recognizes that this court ruled in its order of January 8, 1988 that Mayor Clark did not have the authority to bind the City of Portland to provide retirement benefits for Harrington without an ordinance or other form of approval by the City Council. Harrington asserts that while she can state no breach of contract claim against the City of Portland, she is

entitled to proceed on her contract claim against Mayor Clark. Harrington explains that she is bringing this breach of contract claim against Mayor Clark individually and not in his capacity as the mayor of Portland in that he was acting on his own and as a private person in agreeing to introduce the necessary ordinance. Harrington argues that the agreement between her and Mayor Clark, personally and individually, in no way limits the absolute discretion of Mayor Clark as the mayor of the City of Portland to appoint and remove the Chief of Police.

■ The issue before the court is whether an agreement by the mayor of Portland to introduce an ordinance to personally benefit the Chief of Police can be an enforceable private contract. The introduction of an ordinance by Clark as mayor of the City of Portland must be done in his capacity as mayor and must be done in a manner that best serves the public interest. It would be against public policy for Mayor Clark to privately contract to deprive himself of his best judgment as to what are appropriate ordinances to be introduced to the City Council. *See Hall v. Pierce,* 210 Or. 98, 113, 307 P.2d 292 (1957). If such a contract was made, it is unenforceable.

Harrington's claim for breach of contract in her fourth claim for relief is dismissed.

### B. Interference With Employment Relations

■ Harrington alleges in Count 2 of the fourth claim for relief that Mayor Clark improperly interfered with her employment relations with the City of Portland by breaching the agreement described above for personal and improper reasons that did not benefit the City of Portland.

In that the court has found that the contract as alleged in Count 1 is unenforceable, the court finds that Count 2 fails to state a claim for relief. However, even assuming that Count 1 states a claim for relief, Count 2 is a tort claim asserted against an officer of a public body for acts or omissions done in the scope of his employment and is therefore subject to the provisions of the Oregon Torts Claims Act,

O.R.S. 30.260 to 30.300. In particular, O.R.S. 30.265(3) provides:

> Every public body and its officers, employes and agents acting within the scope of their employment or duties, or while operating a motor vehicle in a ride-sharing arrangement authorized under ORS 276.598, are immune from liability for:
>
> . . . .
>
> (c) Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused.

The introduction and support of legislation are functions which are inherently discretionary. If there was a tort committed as alleged, Mayor Clark is immune from liability in this claim. Count 2 of the fourth claim for relief is dismissed.

### 4. *Fifth Claim for Relief*

In her fifth claim for relief against the City of Portland, Harrington alleges a claim for breach of an express contract and a claim for an implied contract. Harrington seeks to recover from the City of Portland the costs and attorney fees incurred for retaining private legal counsel to provide representation in all matters pertaining to and/or arising from the Special Review Commission's investigation and hearings.

The City of Portland argues that this claim must be dismissed because it is subject to the requirements of section 8–104 of the City Charter, which states:

> The City of Portland shall not be bound by any contract nor in any way liable thereon, unless the same is authorized by an ordinance and made in writing and signed by some person or persons duly authorized by the Council. But an ordinance may authorize any board, body, officer or agent to bind the City without contract in writing for the payment of any sum not exceeding twenty thousand dollars ($20,000); such amount to be adjusted annually based on the average inflation rate for the Portland Metropolitan Area as determined from the U.S. Department of Labor statistics as certified by the City Auditor.

In adopting any ordinance authorizing any board, body, officer or agent to so bind the City for any sum in excess of two thousand five hundred dollars ($2,500) the Council shall make specific findings as to what classes of items or services may be purchased without a contract in writing authorized by a specific ordinance and the Council shall establish rules and regulations to be followed in purchasing such items. Notwithstanding the provisions of this Section, however, the Council may waive the written contract requirement when work, materials or supplies are necessary for an emergency involving public safety or health.

The City of Portland contends that Harrington's claim must fail as a matter of law because she does not allege a writing, ordinance or authorized signature adequate to bind the City of Portland under section 8–104 of the City Charter.

In support of her claim of an implied contract, Harrington relies upon the provisions of section 3.10.030 of the City Code, which requires the City Attorney to "represent ... City ... commissions ... officers ... in all appropriate legal matters." Harrington alleges at paragraph 81 of the amended complaint:

81. On or about March 27, 1986 Defendant City of Portland determined:

a) That it was appropriate for the City Attorney to provide legal representation in all matters pertaining to and/or arising out of the Special Review Commission investigation;

b) That it would present an actual conflict of interest for the City Attorney to provide such representation for both the Special Review Commission and the Chief of Police; and

c) That the City Attorney would provide legal representation for the Special Review Commission, and private legal counsel would provide legal representation for the Chief of Police.

(Plaintiff's Amended Complaint, pp. 21–22).

In support of her claim for breach of express contract, Harrington alleges that Mayor Clark authorized her to retain private counsel under the specific authority of section 2–302 and 2–403, and that the general provisions of section 8–104 are inapplicable. Paragraph 76 of the amended complaint alleges:

76. On or about March 27, 1986, Plaintiff and Defendant Clark agreed that Plaintiff would retain private legal counsel to provide representation for Plaintiff in all matters pertaining to and/or arising out of the Special Review Commission investigation, and that the attorney fees and costs incurred by Plaintiff for such representation would be paid by Defendant City of Portland either from the Bureau of Police budget or in the same manner as attorney fees and costs had been paid for police officers who in the past had retained private legal counsel when the City Attorney had a conflict of interest in providing representation to the officer.

(Plaintiff's Amended Complaint, pp. 20–21).

Harrington argues that Mayor Clark is expressly or impliedly authorized to make such an agreement based upon section 2–302 of the City Charter, which addresses the authority of the mayor of the City of Portland as Commissioner in charge of the Department of Public Safety, as follows: "The Commissioner In Charge of each department shall have the supervision and control of all the affairs and property which belong to that department, subject to the provisions of this Charter and to such regulation as may be prescribed by the Council." Harrington argues that Mayor Clark can authorize payment of her legal expenses out of the Police Bureau budget pursuant to this provision, and that he did so.

In addition, Harrington asserts that Mayor Clark can authorize payment for her legal expenses out of section 2–403 of the City Charter, which establishes a mayor's power to appoint the Special Review Commission and investigate as follows:

The mayor may at any time ... investigate in person or through one or more competent persons appointed by the Mayor for the purpose ... the official acts and conduct of any official or employee in the administrative service of the City.... The expenses of any such in-

vestigation *shall be paid* out of the General Fund, in the same manner as other claims against the City are paid. (Emphasis added).

 At the time the members of the Special Review Commission were appointed, Harrington was a public official of the City of Portland entitled under section 3.10.030 to representation in all appropriate legal matters. Section 2–403 authorizes payment of the expenses of an investigation such as the Special Review Commission out of the general fund. Harrington alleges that there was an agreement between herself and Mayor Clark that legal representation for her before the Special Review Commission was appropriate, and that she was to hire a private attorney, the cost of which would be borne by the City of Portland. The court concludes that in light of the responsibility of the City of Portland to represent its officers in all appropriate matters, and in light of the allegation that Mayor Clark determined that it was appropriate for Harrington to be represented by private legal counsel at the proceedings before the Special Review Commission, Harrington has adequately stated a claim for reimbursement by the City of Portland of the private legal fees incurred in being represented before the Special Review Commission.

### 5. *Eighth Claim for Relief*

In her eighth claim for relief against the City of Portland, Harrington alleges that her employment as Chief of Police was subject to an express and an implied-in-fact contract based upon the explicit and implicit representations of Mayor Clark which created a mutual understanding between Harrington and Mayor Clark that she would continue to serve as Chief of Police, as long as Mayor Clark was the mayor of the City of Portland, unless she was removed for cause. Harrington alleges that the City of Portland breached the terms and conditions of this employment contract by removing her as Chief of Police without cause.

The City Charter provides that the mayor of the City of Portland may remove the Chief of Police at any time and for any reason. As the court has stated in an earlier opinion, the mayor of the City of Portland does not have the power or authority to materially vary the provisions of the City Charter by entering into an employment contract that varies the "at will" nature of the employment agreement.

Harrington's eighth claim for relief is dismissed.

### 6. *Ninth Claim for Relief*

In her ninth claim for relief, Harrington alleges that her employment contract as Police Captain was subject to an express and an implied-in-fact contract based upon Chapter 4 of the Charter of the City of Portland which prohibits discharge of a permanent employee without cause. Harrington argues that the City of Portland breached the terms of this employment contract by causing or allowing working conditions to become intolerable for her, thereby constructively discharging her from permanent employment without cause.

The City of Portland asserts that after her resignation as Chief of Police, Harrington returned to her rank as Police Captain. The City of Portland argues that she has not resigned nor has she been terminated and is at present a Police Captain in the Portland Police Bureau.

This claim for relief is based upon Harrington's assertion of constructive discharge. If it is true, as defendant alleges, that Harrington holds the rank of Police Captain and has not resigned her position as Police Captain, she cannot maintain that she has been constructively discharged. However, the amended complaint at paragraph 18 states, in relevant part, that "[o]n or about June 1, 1986, Plaintiff was … forced to resign from her permanent employment as a Police Captain because working conditions within the Bureau of Police had become intolerable for Plaintiff." In a motion to dismiss, the court must accept the allegations of the complaint as true. If Harrington has, in fact, not resigned from her position as Police Captain, these facts will have to be examined and determined at another stage in these proceedings.

The motion to dismiss Harrington's ninth claim for relief is denied.

## ON MOTION FOR ENTRY OF
## FINAL JUDGMENT

In the matters before the court, defendants Lezak, Beatty and Watson move the court to make an express determination that there is no just reason for delay and to enter final judgment in their favor pursuant to Fed.R.Civ.P. 54(b).

Defendants assert that they wish to put this litigation behind them and to get on with their lives. They contend that without an immediate appeal of this court's order dismissing the claim against them, they could be prejudiced by the loss of important evidence. Defendants argue that their memories of the relevant facts will continue to fade over time and in the event that this court is reversed they will be handicapped in defending themselves at a later time.

Plaintiff, Penny E. Harrington, opposes the motion on the grounds that issues similar to those regarding these defendants remain in the case and it would be a waste of judicial resources to force separate appeals.

### DISCUSSION

This court may direct the entry of final judgment as to one or more but fewer than all of the claims or parties only upon the express determination that there is no just reason for delay and upon the express direction for the entry of judgment. Fed.R. Civ.P. 54(b). In the Ninth Circuit Rule 54(b) judgments are not routinely entered to allow a party to rest free from legal challenge.

> Judgments under Rule 54(b) must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties. The trial court should not direct entry of judgment under Rule 54(b) unless it has made specific findings setting forth the reasons for its order. Those findings should include a determination whether, upon any review of the judgment entered under the rule, the appellate court will be required to address legal or factual issues that are similar to those contained in the claims still pending before the trial court. A similarity of legal and factual issues will weigh heavily against entry of judgment under the rule, and in such cases a Rule 54(b) order will be proper only where necessary to avoid a harsh and unjust result, documented by further and specific findings.

*Morrison–Knudsen Co. v. Archer*, 655 F.2d 962, 965 (9th Cir.1981).

In this case, legal and factual issues arising out of the due process claims made against these defendants remain in the case as to the defendants City of Portland and its Mayor J.E. (Bud) Clark. It would not be a reasonable use of judicial resources to allow separate appeals. While the court sympathizes with these defendants desire to finalize the judgment in their favor, this case is not appropriate for separate appellate proceedings.

The motion for entry of judgment pursuant to Fed.R.Civ.P. 54(b) is denied.